IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DONALD J. ISAAC | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:15-CV-681 |
| | § | |
| EAN HOLDINGS, LLC, *et al*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment (ECF 85). For the reasons set forth below, the Court **GRANTS** the motion for summary judgment.

## BACKGROUND

Plaintiff Donald J. Isaac, proceeding *pro se*, filed this case on July 14, 2015 seeking relief pursuant to Title VII of the Civil Rights Act of 1964. The original complaint named Enterprise Holdings E2209 and Chris Ivey as defendants. Plaintiff amended the complaint on September 9, 2015 to replace Defendant Enterprise Holdings E2209 with EAN Holdings, LLC.

In his pleadings, Plaintiff alleges that Defendants wrongfully terminated his employment due to "retaliation and religion."[1] Plaintiff asserts that Defendants took adverse action against him because of his religious beliefs and did not have proper procedures in place to prevent harassment. Plaintiff alleges that a manager harassed him and he was retaliated against for reporting the harassment to human resources. Plaintiff states that he has suffered high blood pressure from work related stress. He seeks to recover monetary compensation in the amount of

---
[1] *See* Amended Complaint, ECF 19, at *3.

1

$985,000.00 for his emotional distress and mental anguish. He also seeks to recover an additional $450,000.00 for lost wages.[2]

With his Original Complaint, Plaintiff attached copies of the Charge of Discrimination that he filed with the EEOC and the Dismissal and Notice of Rights that he received from the EEOC. In his charge, signed by Plaintiff on May 4, 2015, Plaintiff alleges discrimination based on religion, retaliation and harassment from February 14, 2015 to February 27, 2015. Plaintiff states that he began working for Enterprise Rental Car as a Title Service Agent on August 20, 2014 under the supervision of Jose Flores, Branch Manager. He asserts that a Manager Trainee, Kelly Williams, mocked him and made jokes about his Christian faith on February 14, 2015 that offended him. Plaintiff states that he then received a memorandum re-emphasizing the company's Business Ethics and Policy on professionalism on February 27, 2015. The EEOC issued the Dismissal and Notice of Rights on May 12, 2015.

Defendants filed a Motion for Summary Judgment (ECF 85) seeking dismissal of all claims asserted by Plaintiff. Defendants assert that Plaintiff has not shown an adverse employment action to support a claim of discrimination or retaliation. Further, he has not shown that any similarly situated non-Christian employees or employees that did not undertake protected activities were treated more favorably. Defendants assert that Plaintiff voluntarily resigned his employment, but even if he could establish that he was terminated, his termination would have been supported by legitimate, non-retaliatory reasons. Namely, Plaintiff violated EAN's attendance policy. Plaintiff does not have evidence showing a causal connection to support a claim of retaliation. Finally, Defendants allege that Plaintiff does not have a cause of

---

[2] Plaintiff states that this amount additionally includes court costs and attorney's fees; however, Plaintiff is proceeding *pro se* and *in forma pauperis*. *See* Original Complaint, ECF 1, at *5.

action against Chris Ivey, a Regional Manager of EAN, because Title VII does not impose personal liability on individuals.

Defendants' summary judgment evidence shows that Plaintiff started working directly for EAN on August 20, 2014, after initially working for EAN through a staffing company. Plaintiff's job duties as a Service Agent included washing, detailing and inspecting rental vehicles between rentals and performing other necessary services to prepare the vehicle for the next rental customer. Plaintiff's immediate supervisor was Branch Manager Jose Flores.

In his deposition, Plaintiff testified concerning two incidents that occurred on February 14, 2015. First, Plaintiff stated that Kelly Williams, a manager trainee for EAN, made inappropriate comments to him and another employee concerning Indian customers. Plaintiff asserts that Williams did a "comedy skit insulting Indian people and their culture" and then commented that they are "a bunch of stinking niggers."[3] Plaintiff agreed in his deposition that Williams' statement was only directed to Indian people and that the statement was not directed to him.[4] Next, Plaintiff testified in his deposition that Williams mocked his Christian faith. Plaintiff stated that he was having a private conversation with a co-worker in which he was expressing how blessed he felt that an employee next door found his lost wallet. Plaintiff testified that he made statements to his co-worker such as "oh, thank God" and "[a]ll praises and love and glory to God."[5] Williams allegedly interrupted their conversation and pretended to be an exuberant pastor saying things like "oh, thank you, Lord Jesus."[6] Plaintiff characterized

---

[3] *See* Defendants' Motion for Summary Judgment, Oral Deposition of Donald J. Isaac, ECF 85-1 at *89 (Deposition Exhibit 10).
[4] *Id*. at *40.
[5] *Id*. at *38.
[6] *Id*.

3

Williams' behavior like "a big comedy skit" and "extremely over-exaggerating the normal effects of a pastor."[7]

Plaintiff submitted a one-page document to human resources complaining of these incidents and he verbally reported it to his supervisor, Flores. He also called and spoke to Ivey. According to Plaintiff, Ivey stated that he did not condone Williams' behavior and that "he [felt] bad that that happened" to Plaintiff.[8]

Miranda Harrell, a Generalist Manager for Human Resources, gathered statements from Williams, Plaintiff and Plaintiff's co-worker, Edgardo Palencia, regarding the complained-of February 14, 2015 incident. The statements from Williams and Palencia are not signed and refer only to the incident concerning the Indian customers. Both Williams' and Palencia's statements relay that Williams made an inappropriate comment or joke after work about the smell or hygiene of the couple and that Williams apologized to Plaintiff when Plaintiff stated that he was offended by Williams' language.[9] Plaintiff asserts that Palencia's statement is "watered down" to minimize Williams' actions.[10]

Harrell met personally with Plaintiff on February 27, 2015, together with Amy O'Byrne, a Human Resources Generalist. Harrell asserts that she gave Plaintiff a memorandum at the meeting expressing that EAN takes disrespectful conduct seriously and that any further behavior from Williams or other employees would result in disciplinary action for the responsible person. In addition, memorandums were sent to both Flores and Assistant Branch Manager Heather Grubbs from Ivey reiterating managerial responsibility for maintaining a positive and professional working environment in accordance with the company's Business Ethics and Policy

---

[7] *Id.*
[8] *Id.* at *43.
[9] *See* Defendants' Motion for Summary Judgment, ECF 85-3, at *4–5.
[10] *See* Plaintiff's Response to Motion for Summary Judgment, ECF 96, at *2–3.

Guide. The memos additionally warned against any retaliation against employees. All three memos contain language stating, "I have confidence that this behavior will not happen again . . . [a]ny future occurrences and/or failure to abide will result in disciplinary action up to and including discharge."[11] Ivey counseled Williams and also presented him with a memorandum warning him that he could face disciplinary action, up to and including discharge, if he did not speak to customers and co-workers with respect and professionalism.[12]

Plaintiff testified in his deposition that Mondays are the busiest days for service agents and all service agents work 11 hours on Mondays. Plaintiff testified that "we had to work 11 hours, from 7:00 in the morning until 6:00 in the evening."[13] He also stated that he received a verbal warning from Flores about his attendance and tardiness sometime prior to March 9, 2015. Plaintiff stated that he was often sick on Mondays, feeling nauseated and sick with anxiety and panic attacks. He would frequently ask Flores if he could come in later when he felt better.[14] In a memo to Plaintiff, Flores documented six Mondays between March 9, 2015 and May 11, 2015 when Plaintiff arrived between ten minutes and three hours late for his shift or did not come to work.[15] Flores instructed Plaintiff that future tardiness would not be tolerated and that absences without prior approval would require a doctor's note immediately upon return to work. Plaintiff was warned that the failure to comply would result in immediate termination.[16] Plaintiff signed the memo on May 19, 2015. Despite his deposition testimony that service agents worked 7:00 a.m. to 6:00 p.m. on Mondays, Plaintiff states in his response to the motion for summary

---

[11] *See* Defendants' Motion for Summary Judgment, ECF 85-3, at *3 and *6–7.
[12] *See* Defendants' Motion for Summary Judgment, ECF 85-2, at *2 and *4.
[13] *See* Defendants' Motion for Summary Judgment, ECF 85-1, at *18.
[14] *Id.* at *70.
[15] *Id*. at *90.
[16] *Id*.

5

judgment that he was only available from 10:00 a.m. to 6:00 p.m. and that Flores was aware of that when he transferred to the 5102 location.[17]

Plaintiff did not show for work on June 1, 2015. He sent a text to Flores that morning stating that he had a dead battery. Flores responded, "I'll have to call you later to discuss."[18] Plaintiff asserts in his response that he was never "told to come in and work" and he was not "told that [he] still had a job there."[19] Plaintiff testified that Flores attempted to call his cell phone and left a voice mail. Plaintiff sent a text in response to Flores on June 2, 2015 stating, "Got your mssg, I can't come by but I know I'm terminated, I have you saying it on Audio remember, but thanks."[20] Plaintiff then sent another message to Flores stating, "Just heard your VM, Jose ur on Record Sayin if I'm late another MONDAY I would be Terminated for sure..And you did not tell me to come in anyway and work. Which means I'm terminated. I Did Not Resign."[21]

Plaintiff testified that he did not have a copy of the voice mail left by Flores, but stated that Flores asked him to come to work around 4:00 or 4:30 to discuss the situation with him and Ivey. Plaintiff asserted that he was scared and uncomfortable going there at closing time because of everything that took place and he did not see the point because his "termination had already been established."[22] When asked to explain why he was scared, Plaintiff stated that he thought they wanted to negotiate something with him and he did not know what to expect.[23]

Flores denies stating that Plaintiff's employment was terminated in the voice mail and Plaintiff acknowledges that he does not have anything in writing stating that his employment was

---

[17] *See* Plaintiff's Response to Motion for Summary Judgment, ECF 96, at *2.
[18] *See* Defendant's Motion for Summary Judgment, ECF, 85-1, at *94.
[19] *See* Plaintiff's Response to Motion for Summary Judgment, ECF 96, at *3.
[20] *See* Defendants' Motion for Summary Judgment, ECF 85-1, at *95.
[21] *Id*.
[22] *Id*. at *64.
[23] *Id*.

6

terminated. Plaintiff testified that he later applied for work at Dollar General. In his application, Plaintiff stated that his employment with Enterprise was terminated because he was late for work. Plaintiff opined that he did not get hired because he was "being truthful in saying that [he] was terminated" and Enterprise told them that he resigned his employment.[24]

## SUMMARY JUDGMENT STANDARD

The Court may only grant a motion for summary judgment when there is no genuine dispute of material fact and the moving party is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "material fact" is one that might affect the outcome of the suit under governing law. *Id*. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id*. All facts and inferences are viewed "in the light most favorable to the nonmoving party." *McFaul v.*

---

[24] *Id*. at *83.

7

*Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id*.

## ANALYSIS

### I. Claims against Ivey

Plaintiff filed this Title VII lawsuit against both his employer, EAN Holdings, LLC, and his Regional Manager, Chris Ivey. Title VII prohibits unlawful discrimination by an "employer." *See Garcia v. Elf Atochem North America*, 28 F.3d 446, 450 (5th Cir. 1994). An "employer" is defined as "a person engaged in an industry affecting commerce . . . and any agent of such person." 42 U.S.C. § 2000e(b). Suit against an agent is only permissible in the agent's official, as opposed to individual, capacity. *Garcia*, 28 F.3d at 450. To the extent Plaintiff is suing Ivey in his official capacity, however, "a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity." *Smith v. Amesdisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). Plaintiff cannot maintain his Title VII claim against both the employer and the agent. Plaintiff has not stated a viable claim against Ivey and the claims against him should be dismissed.

### II. Religious Discrimination

Plaintiff alleges that he was discriminated against because of his Christian faith. The only incident identified by Plaintiff occurred on February 14, 2015. Plaintiff alleges that Williams, a manager trainee, mocked his religious beliefs by pretending to be an exuberant pastor.

Title VII makes it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). There are essentially two theories of liability for discrimination under Title VII: disparate impact and disparate treatment. In the present case, Plaintiff alleges disparate treatment. Under the disparate treatment theory, Title VII is violated if the employee can show that the employer intentionally treated the employee unfairly because of race, color, religion, sex, or national origin. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1523 (5th Cir. 1993).

To succeed, a plaintiff proceeding on a disparate treatment theory of employment discrimination must show both disparate treatment and discriminatory motive. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir. 1988); *Lee v. Conecuh County Board of Education*, 634 F.2d 959, 962 (5th Cir. 1981). The plaintiff must show that the protected trait – in this case, Plaintiff's religion – actually motivated the employer's decision. The protected trait must have actually played a role in the decision-making process and must have had a determinative influence on the outcome. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701 (1993). Discriminatory motive or intent may be shown by direct or circumstantial evidence. *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1150 (5th Cir. 1982).

Plaintiff does not present direct evidence of discrimination. The so-called McDonnell-Douglas framework, espoused in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973), is used when evaluating Title VII discrimination cases based upon circumstantial evidence. The initial burden is on the plaintiff to show facts sufficient to warrant recovery. *Armstrong v. City of Dallas*, 997 F.2d 62, 65 (5th Cir. 1993). To recover damages or survive a motion for summary judgment, a Title VII plaintiff has the burden of making a *prima*

*facie* showing that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) despite his qualifications, he was dismissed or suffered an adverse employment action; and (4) that his position was filled by someone outside the protected class or that other similarly situated, non-Christian employees, were more favorably treated. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981); *Pratt v. City of Houston, Texas*, 247 F.3d 601, 606 (5th Cir. 2001), *cert. denied*, 540 U.S. 1005, 124 S.Ct. 543 (2003); *Ward v. Bechtel Corporation*, 102 F.3d 199, 202 (5th Cir. 1997). To prove discrimination, a plaintiff may use circumstantial evidence that he has been treated differently than similarly situated employees outside of the protected class. *See Polano v. City of Austin, Texas*, 78 F.3d 968, 977 (5th Cir. 1996). A plaintiff must show that he was treated differently under circumstances that were "nearly identical" to his. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). An "adverse employment action" is an ultimate employment decision such as hiring, granting leave, discharging, promoting, and compensating. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).

If a plaintiff succeeds in showing facts sufficient to warrant recovery, a rebuttable presumption of discrimination, or inference of discrimination, arises. *Armstrong*, 997 F.2d at 65. The burden is then on the employer to come forward and show legitimate, nondiscriminatory reasons for the challenged acts. *Id*. If the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the reasons put forth by the employer are a mere pretext—or phony reason—for accomplishing the discriminatory act. *Id*.; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981). Alternatively, a plaintiff may show that the employer's reason, though true, is only one of the reasons for its conduct and that another

motivating factor is the plaintiff's protected characteristic. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003)).

In the motion for summary judgment, Defendants do not dispute that Plaintiff is a member of a protected group. They argue, however, that Plaintiff cannot show that he was qualified for his position due to his repeated tardiness, he cannot point to any adverse employment action and there is no evidence that similarly situated non-Christian employees were treated more favorably than Plaintiff. In response, Plaintiff asserts that the adverse action was that he "was later discharged in a Retaliatory fashion."[25] He also states that there is documented proof of two non-Christian employees treated more favorably than he was, but he does not identify the employees or provide any facts in the response.

Here, even if the Court assumes *arguendo* that Plaintiff is a member of a protected group, that he was qualified for his position and that he suffered an adverse employment action, there is no evidence before the Court showing that non-Christian employees were treated more favorably. A plaintiff must show that he was treated differently under circumstances that were "nearly identical" to his. *Mayberry v. Vought Aircraft Co.*, 55 F.3d at 1090. Plaintiff asserts in his reply brief that an employee named Isidoro Alvarado is a similarly situated employee who is still employed by EAN. The documents submitted by Plaintiff show that Alvarado was counseled by Flores for not properly cleaning cars. There is no evidence that Alvarado is a non-Christian or that Alvarado had repeated tardiness or absences on Mondays—the busiest day for service agents. Plaintiff has not submitted any evidence showing that he was treated differently than other non-Christian employees under "nearly identical" circumstances. Neither "conclusory

---

[25] *See* Plaintiff's Response to Motion for Summary Judgment, ECF 96, at *6.

allegations" nor "unsubstantiated assertions" will satisfy Plaintiff's burden. *Stults v. Conoco, Inc.*, 76 F.3d at 655.

Even if Plaintiff met the minimal showing required to establish a *prima facie* case of discrimination, Plaintiff's religious discrimination claim would still ultimately fail on the motion for summary judgment. Once a *prima facie* case is shown, the defendant must come forward with a legitimate, nondiscriminatory reason for the adverse employment action. Through the production of admissible evidence, Defendants must set forth reasons which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the termination of Plaintiff's employment. *Burdine*, 450 U.S. at 254–55. At this step, the employer must produce evidence that, "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742 (1993) (emphasis in original). The question is simply whether a defendant has produced such evidence—not whether that evidence is persuasive or credible. *Hicks*, 509 U.S. at 510–11, 113 S.Ct. at 2749.

Defendants produced competent summary judgment evidence that, taken as true, permits or supports a finding that Plaintiff voluntarily terminated his employment. Further, Defendants produced evidence that even if the Court concluded that Defendants terminated Plaintiff's employment, the termination was the result of Plaintiff's failure to comply with EAN's attendance policies. Plaintiff disputes whether he actually violated the attendance policy, but the question here is whether the employer believed that the employee committed the infraction and made the decision to discharge the employee based upon that belief. *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1165–65 (5th Cir. 1993).

The ultimate burden of showing that he was a victim of intentional discrimination always remains on the plaintiff. *Armstrong*, 997 F.2d at 65. "On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). A plaintiff may show that there is a genuine issue of material fact concerning pretext by showing either that the employer's proffered explanation is false or by showing disparate treatment. *Wallace v. Methodist Hospital System*, 271 F.3d 212, 220 (5th Cir. 2001). For summary judgment purposes, the core issue is whether a genuine issue of material fact exists as to whether Defendants intentionally discriminated against Plaintiff. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444 (5th Cir. 1996); *Armstrong*, 997 F.2d at 65. A plaintiff must present evidence that will permit a rational fact finder to infer intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000). "[S]ummary judgment is inappropriate if the evidence taken as a whole . . . creates a reasonable inference that [religion] was a determinative factor in the actions of which plaintiff complains." *Pratt*, 247 F.3d at 606–07 (quotation marks omitted).

Plaintiff has not presented competent summary judgment evidence sufficient to create an inference that religion was a determinative factor in the decision to terminate his employment. Plaintiff has not presented evidence from which a rational fact finder could infer intentional discrimination and, therefore, he has not produced evidence sufficient to raise a genuine issue of material fact for trial on the issue of pretext. *Reeves*, 530 U.S. at 120.

### III.    Hostile Work Environment

Construing Plaintiff's *pro se* pleadings liberally, he alleges that he was subjected to a hostile work environment that caused him to suffer mental anguish and distress. Beyond

"economic" or "tangible" discrimination, Title VII also encompasses a discriminatorily hostile or abusive work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404 (1986). Title VII is violated if the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993) (*citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. at 65, 67, 106 S.Ct. at 2405).

To establish a hostile work environment claim based on a supervisor's conduct, a plaintiff must show: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) that the harassment was based on a protected trait; and (4) that the harassment affected a "term, condition or privilege of employment." *Lauderdale v. Texas Department of Criminal Justice, Institutional Division*, 512 F.3d 157, 162-63 (5th Cir. 2007). Harassment affects a term, condition or privilege of employment if it is "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074 (2002).

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S.Ct. at 370. By the same token, an employee's conditions of employment are not actually altered unless the employee subjectively finds the environment to be abusive. *Id*. at 21-22. To be determined to be a hostile or abusive environment, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275,

2283 (1998) (citing *Harris*, 510 U.S. at 21-22, 114 S.Ct. at 367).  Courts look at all of the circumstances when determining whether an environment is "hostile" or "abusive," which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.  "[N]o single factor is required." *Id*.

Plaintiff alleges only one incident on February 14, 2015 when Williams allegedly mocked his Christian faith.  He does not identify any other statements by Williams or others referencing his faith.  Allegations of isolated incidents and simple teasing are not sufficient to survive a motion for summary judgment.  *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004).  Plaintiff has not come forward with summary judgment evidence showing severe and pervasive discriminatory conduct altering the conditions of his employment. Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

IV. **Retaliation**

Plaintiff alleges that Defendants retaliated against him for complaining about how he was treated by Williams.  A plaintiff alleging retaliation must show that: (1) he participated in a Title VII protected activity, (2) he suffered an adverse employment action by his employer, and (3) that there is a causal connection between the protected activity and the adverse action. *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 331 (5th Cir. 2009).  While not limited to ultimate employment decisions, "[t]he antiretaliation provisions protect an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2414 (2006).  To be an adverse employment action for purposes of establishing retaliation, the action must be "materially

15

adverse." *Id.* at 68, 126 S.Ct. at 2415. A plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* "[P]etty slights or minor annoyances that often take place at work and that all employees experience," which may include personality conflicts and "snubbing," are not actionable. *Id.*

Plaintiff asserts that he complained to his supervisors about Williams' conduct and that his employment was later terminated in retaliation for his complaint. Plaintiff has not produced evidence, however, showing that his employment was terminated. Plaintiff's own deposition testimony establishes that Plaintiff concluded on his own that his employment would be terminated when he failed to show for work on June 1, 2015 because he had been warned that he may be terminated if he had any further tardiness or attendance issues. There is no evidence that anyone at EAN told Plaintiff that his employment was terminated and there is no documentation showing that EAN made the decision to terminate Plaintiff's employment.

Moreover, there is no evidence of a causal connection between Plaintiff's February 2015 internal complaint and the end of Plaintiff's employment in June 2015. Causation is difficult to prove in the absence of direct evidence, but some indications of causation include: (1) the absence of any reference to the conduct at issue in the employee's disciplinary record, (2) deviation from the employer's customary "policy and procedures in terminating the employee," and (3) temporal proximity between the termination and the protected conduct. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994). Here, Defendants produced evidence of Plaintiff's repeated tardiness in the time period leading up to the end of his employment and of his failure to appear for work on June 1, 2015 after being warned that action would be taken if he had any further attendance issues. There is no evidence of a deviation from Defendants'

normal practices or policies. In sum, Plaintiff has not established a *prima facie* case of retaliation.

## CONCLUSION

There are no genuine issues of material fact in this case. Defendants are entitled to judgment as a matter of law. The motion for summary judgment should be granted. It is therefore

**ORDERED** that Defendants' Motion for Summary Judgment (ECF 85) is **GRANTED**. The complaint is **DISMISSED** with prejudice. It is further

**ORDERED** that the Pretrial Conference set for August 10, 2016 and the Jury Selection and Trial set for August 15, 2016 are **CANCELED**.

So ORDERED and SIGNED this 9th day of August, 2016.

_K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE